Thank you. Good morning, Your Honors, and may it please the Court. Caroline Platt for Mr. Rodriguez-Soriano along with my colleague Ann Rigby. I'd like to start with the Rule 29 issue unless the Court would prefer otherwise. The evidence was insufficient to support the conviction of Mr. Soriano because the uncorroborated confession was the only evidence that a crime was actually committed in this case. As the Court is aware, in a twin pair of cases from the Supreme Court in 1954, Smith and Opper, the law has been very clear for a long time that an uncorroborated confession is insufficient evidence to prove that a crime happened or that the defendant committed it. But help me understand what do we make of the ATF Agent Brickholder's testimony at trial? There's not a lot here. I mean, I take your point, but why doesn't that tip the scale? So Agent Brickholder's testimony? So the only thing that he testified to is the statements of Mr. Soriano, which we're leaving aside for the reasons we just discussed, and then somebody else testified to the existence of an ATF form, which itself doesn't establish a crime committed because the crime here is a false statement on the form. The form establishes... Well, he testified that a DC homicide detective told him that Soriano was involved in the... The Court ruled that that was hearsay. It was a hint not for the truth of the matter asserted, but only to show why Agent Brickholder did what he did. And so the fact asserted by the witness, Brickholder, I think it was, that the homicide detective told him that there was a straw purchase that Soriano had committed is not evidence in the case for the truth of the matter asserted, which is the straw purchase. It is only to show that Brickholder then went to Soriano's house and got this confession. And so the fact is not truth of the matter asserted. It's not truth in the record. It's not evidence in the case. It's only hearsay to show why the agent even went to Mr. Soriano's house to begin with. And that's a ruling in the trial testimony. No, go ahead. I think you're... Yeah. Help me understand. You sort of made this distinction between what I will talk about as the act and the mental state. The act here, as I understand it, for the crime that's charged, is the false filling out of a form to purchase a firearm. It's the false statement. Right. But it's the false statement on the form to purchase the firearm. Right. It's not a general false statement. It's a false statement on that particular 4473 form. One particular false statement. Right. And that's the act, right, of the crime. The mental state of the crime is the purpose for which that action was taken. Right? That is to avoid the restrictions on the purchase of a firearm. I want you to describe it. You tell me. What is the mental state required by the crime for which this defendant was convicted? The third element of the crime is knowingly. I mean, if you're asking me what the mens rea of the crime is, it's knowingly. Correct. So he's filling out the form and he's doing it knowingly. Right. So... Allegedly. That's the allegation. That's the allegation. In fact, that's the conviction the jury found. So what we have here is a lot of corroboration that he made a statement and it was on a form. Right. That is, you agree, is well corroborated. What you're questioning is that the third element, that is the knowingly part, that that part is what's not corroborated. And the second element, which is falsity. The statement, so the three elements, this is in the jury instructions actually in this case, which is JA 255 and 56, there are three elements as this jury was instructed. The statement that he was the actual buyer in connection with the sale, so it's the statement on the form. The statement was false, knowingly. So our judge listed his three elements and we are alleging in our argument that both the second and third elements are uncorroborated. And those are both mental states. Right. Falsity is a little bit more than a mental state. Falsity... He had to know that it was false or not. I mean, that's the knowingly false. But here's my question about OPPER. Right. I read OPPER as saying that as long as you corroborate the action, you don't have to corroborate the mental state. And that's the basic idea that comes out of OPPER is that you don't have to corroborate every element of the offense. You agree with that. Right. And so the question I've got, and I really am sort of curious from your perspective. So there's, let's assume that I found that there was corroboration of the act statement. Right. Element one, as you describe it. Right. There's corroboration of that that's sufficient. But I'll accept, at least for this question, that there's no corroboration of the second and third. Right. Why does that matter under OPPER? Because we've corroborated the trustworthiness of the statement because he made the actual act. So here's how I understand your Honor's question. And I do agree. And I see why you would read OPPER that way. And the part of OPPER, well, let me, a frolic and detour that I'll hold for a second. I would agree with you for these purposes that the act is corroborated because we have the form. The firearm purchase happened and he signed the form that says he's the actual fire. And I think, I understand why you would say that OPPER says that all of the elements, the whole crime doesn't have to be corroborated by independent evidence. I disagree with you that falsity is, in your reading, one of the elements that does not have to be corroborated because falsity is a crime element and not a mens rea element. The falsity is part of the, the falsity is in fact what makes it a crime. So you read OPPER as requiring not just corroboration of some of the act, but you must corroborate every piece of the act. That doesn't make sense, right? I think that's an overstatement of my answer. That's what I'm trying to get at. I'm not sitting a trick, right? I'm really trying to get to you. Thank you. So buying the gun is not a crime, particularly for Mr. Soriano, who's not a prohibited person under 922. And so how I would say that is the element of leaving aside knowingly, which you always need basically for criminal law, the element in this case that makes it criminal is the falsity. So to me, that's a fundamental part of the actus reus of the crime. It's element two, the falsity, that is the criminal act. It's the falsity of the statement, which is why we think element two has to be corroborated by evidence under your reading of OPPER. The falsity should be corroborated. Why is that? I thought OPPER says that it's not a specific part that has to be corroborated. It's just that some part has to be corroborated. It can't be totally uncorroborated. And let me give you a different hypothetical and see if it helps, right? So what about the possession with intent to distribute of marijuana? I got possession of marijuana. Everybody agrees I'm holding the marijuana. But then I confess I was going to go sell this. But see, so there are two cases from this court that I want to bring up. And one of them is cited in our brief, and I apologize. One of them I don't know if it's cited in our brief, but it's the one that's cited in our brief. And one of them is about drug possession, which is what made me think of that. And Judge Duncan, I actually believe you were on both panels, so you might remember them. I can assure you I will. So one of them is United States v. Stevens with a P-H. It's from 2007, and that one is cited in my brief. I'd be happy. It's 482-3-669. And in that case, they apprehended a guy on the street, and then they go question him after he Mirandized, he waved. And he confesses to having fired the shots, but also selling some drugs, and the gun was related to that. So he ends up with a 922-G, an 846, I think, and a 924-C. He ends up with a 300-month sentence. But the only evidence of the gun and 924-C part was his uncorroborated confession. And so even though they have the act of him possessing the gun, and even firing the gun because they apprehended him on the street, this court held that there was... And then he confessed to there was this drug dealer named Red, and he was driving this white Mazda, and he had all of these facts in his confession. And they had a police officer on the stand, like Agent Brooke Holder here. But this police officer said, I know Red. His name is, I don't remember his name, let's call him John Depp, but he knew the real name. And he drives a white Mazda. So this police officer corroborated actual facts of Mr. Stevens' confession. And this court held that that was insufficient evidence of the drug dealing and the 924-C, the 922-G he didn't challenge. So in that case... He was caught with the gun. I'm sorry, I'm not... He was caught with the gun, but he confessed to drug distribution conspiracy and the gun being related to that for 924-C. And they said even though the police officer could corroborate his story about a drug dealer on the street named Red and other parts of his confession, that was not a corroboration. There's nothing to corroborate the 846. And the 846 destroys the 924-C. Exactly what happened. Right. So it's not the gun... Because the 924-C is corroborated with respect to the gun,  But there's no drugs. That's exactly what I mean, Your Honor. So with our case, the falsity is the criminal act. The form is not criminal unless it's false. And so for me, element two, the falsity of the false statement is that the actual act is raised that makes it a crime. But give me a different case because I don't think Stevens helps you at all. Stevens just says that if you've got a gun and you confess to drugs, there's no corroboration of you dealing drugs because you're caught with a gun. The action there is the dealing of drugs. So what's the second case that you said you didn't cite? The other case is called Sperling, S-P-E-R-L-I-N-G. It's 400 Fed Appendix 765 from 2010. That was a 922-G3 case where it's a drug user in possession of a firearm. I'd actually like to read you this quote. It's unpublished. I wouldn't spend your time on it. But it was written by Judge Duncan, so I'm sure it's very persuasive. The question before us, the court, is not, as the government would have it, whether there was sufficient evidence to convict, including Sperling's admissions, but whether there was sufficient independent evidence to corroborate those admissions. That gets me to the point I made in my reply brief that the government here, I feel, is bootstrapping, using the confessions to corroborate the confessions, which I don't think is appropriate under offer. So in that case, the person, again, was caught with a gun and confessed to having used drugs, and they had a canine that alerted on the vehicle, but there were no drugs in the vehicle. But even the canine alert was not enough to corroborate his confession to being a drug user because there were no actual drugs. Right, because you don't have the act. In that instance, you don't have any corroboration that he actually possessed or distributed whatever the crime was. But here, we know he committed the act. It's just a question of whether it was false. But to me, the falsity is the criminal act. The form is not a crime unless it's false. Falsity is the criminal part of the act because the form is not criminal. That's true of any fraud. I do want to ask a question about the expert witness testimony, which I wouldn't know quite what to make of it. But I wonder if... It seems to me that you do the district court a disservice by contending that the district court's holding amounts to an impermissible per se exclusion because I thought the district court gave contrafactuals where such testimony might well be helpful. They just didn't exist here. I want to push back a little bit on that particular characterization because I think that that makes a difference. It's not, in all circumstances, for all purposes, that such testimony wouldn't be admissible. It just wouldn't be useful here because, well, for a couple of reasons. It appears to... On its face, it looks as though it does tend to at least intrude in the province of the jury in determining facts. But also, it's a bit confusing because you don't quite know what to make of it. I would like to know if I was the same expert. I'll stop there. I thought you were done, Your Honor. I apologize. I probably was. This is the same expert that was relied on in Finch v. McCoy last week. This is apparently Finch v. McCoy day. It's Dr. Brian Cutler. But this is a false confession testimony and not eyewitness testimony as it was last week. So I think I agree. Judge O'Grady certainly said that in other circumstances he might allow such testimony. But as I tried to say, and perhaps not very well, I feel like to say that you might allow it just if somebody is severely mentally ill but not in case where someone's not. But that isn't, I think, or at least that's not how I read it, and I'm not sure that that's how we need read it either. It's just here, given what the role of the expert testimony in this case was simply to suggest that there are techniques that are problematic, but they don't... That happened in this case. That happened in this case, but it doesn't... It has no... I would not know quite what to make of that or how to utilize it. So I can see I'm sympathetic to the judge's determination that that is potentially very confusing for a jury. And I've reached that conclusion because I found it very confusing. I'm not sure I would have understood quite how to factor that into an analysis. So leaving aside the per se aspect of his ruling or not, I would like to emphasize that our primary complaint about the reasoning of the judge is that he had legal and factual errors in his analysis where he did not analyze the actual basis of Dr. Cutler's testimony. He thought he relied only on a certain kind of social research, which is laid out in detail in our brief, and not the other kind where the social psychologists know which confessions are false or true because of the way they do social psychology research. And so that's both a factual error and a legal error. He didn't analyze the testimony the way it was offered. And Dr. Cutler testified about this at length. It wasn't that it wasn't presented at the hearing. And so in that sense, the judge, I think, was just relying on... I understand the courts are busy, but relying on an analysis he had done previously instead of looking at the way that this testimony, as proposed, differed, perhaps from testimony he had been offered before, or that the court had been offered before, which is one of the reasons that we think it was an abusive discretion. Perhaps there's a way he could have analyzed this testimony that would have analyzed it as offered, that then he could have excluded it, and it wouldn't have been an abusive discretion. But this analysis didn't match the testimony offered. So that's a factual error, and a factual error, by definition, and legal error is an abusive discretion under Kuhn. I mean, that's the standard. And so the way that he analyzed it didn't match the testimony that was given. So he didn't analyze what was offered. That's why it was an abusive discretion to exclude it, apart from the per se or non-per se question under this precedent in Belia. I don't know how to pronounce it, even though it was our office's case. I apologize. I see that my time has expired. You've responded to my question. Thank you. Thank you, Your Honor. Thank you, Ms. Black. Mr. Trump. Thank you. May it please the Court, Defense Counsel, Jim Trump on behalf of the United States. I'll address the corroboration issue first. As the Court is aware, in Abu Ali, there was quite an extensive discussion of Abur and Wong Sun. And the litmus test is trustworthiness, whether there was sufficient evidence in the record to corroborate the confession such that the confession could be deemed trustworthy. Here, there were a number of facts independent of the confession that corroborated the trustworthiness of those statements. One, the defendant purchased two guns. Two guns are significant in that here you have an unemployment. We assume that the confession is trustworthy. The question is you can't use the confession. I think what Abbott stipulated is true. We assume that it's true. We don't need to corroborate trustworthiness. The question is what outside of the confession supports it. That's the question. That's what I'm discussing here. But you said trustworthiness. The corroborative evidence need not be sufficient independent of the facts or independent of the confession to establish the crime. The extrinsic proof has to fortify the truthfulness and the trustworthiness of the confession. I'm not saying that the corroborative evidence, and that's a direct quote from Abu Ali. Okay. Go ahead. Here, he purchased two guns, and two guns is significant. One, unemployed 23-year-old. Is that illegal in North Carolina? That's Virginia, Your Honor. I mean Virginia, I mean. No. I know it's not legal in Virginia. But it raises a certain degree of suspicion on the part of the agents, and it certainly seemed problematic to the defendant because during his confession, during his statement to the officers, to the ATF agents, who had come to visit him at his home, his mother's house, sat at a table, completely voluntary, no coercion, no entrapment type of questions, anything to suggest it's anything but voluntary. He explains that he bought one gun first, went to the range, it jammed, went back later, bought a second gun. That is demonstrably a lie. So we have a statement about the two guns that is a provable lie because the transaction for the two guns occurred at the same time. He bought two guns at the same time, and he lied about that. That is an independent fact, provable independently. Two, he could not produce the guns. They asked for the guns. He didn't have them. I don't know how that helps you, though, to be honest. The difficulty that I have here is that it seems to me that it would have been a fairly easy matter for the government to get something from Ron being incarcerated. I mean, there could have been, it could not have been that much of a challenge to get something other than to support the confession, other than the fact of the confession. And it would have made life just a lot easier for the government. I agree, Your Honor, but there were practical reasons why certain evidence could not be admitted, and we did run into a 404B issue with respect to the purchase of a third gun. So that evidence was not, we could not present it. But it was evidence that the agents had when they went into the interview, but it was not. Is the law clear that the corroborating evidence, what we're talking about here, that it must be admissible? So Judge Duncan asked the question earlier about the hearsay statement that was admitted not for the truth, right, that this came from an informant. Burkholder. Burkholder. I'm not going to try to pronounce the name. Burkholder. Yeah. So if we're thinking about two different ideas, one is, is there sufficient evidence for a jury to convict? But OPER is about a different idea, right? It's not really about whether the jury can get there. And I get why the statement from Burkholder is not sufficient or doesn't help on a sufficiency of the evidence claim. But on an OPER claim, why wouldn't we look at that other evidence, even though not admitted for the truth of the matter for the jury's purpose, to assure ourselves of the reliability of the confession? I mean, we're just simply trying to say, is the confession itself reliable? And so I get that that's not admitted for the truth of the matter. Arguably, the 404B you want to talk about, maybe that would allow you to bolster the trustworthiness of the confession. What I don't see anywhere, when I look at the line of case law, is OPER telling us that the only corroborating circumstances you can look at are those that were both admitted and admissible and usable by a jury in reaching the conclusion, right? It's an independent inquiry by the judge under OPER. So why is that not the right way, or at least one way to look at it? I think it could be, but it didn't happen here. In other words, I can't stand here and say that the judge had independent evidence to establish the... But he had the statement from Burkle. The question was... We had that statement, yes. Right, and the question, which is also a question, which I think is a fair question for both counsel, is, okay, it's not admissible. We all recognize it's not admissible for the truth of the matter, but why isn't it admissible to... It's not independently admissible, but since it's a separate inquiry, why isn't it admissible for the purposes of bolstering the confession? And your answer would be... In fairness to defense, we did not... That's not what you offered. We did not offer it or litigate it in terms of... Right, but that's not real. I mean, I appreciate your candor to the court, but it doesn't answer the question exactly, because through the lens that we are using to consider this now, why isn't it corroborative? And I will ask Ms. Platt as well. Again, I don't want to stretch that statement. I applaud you a great deal for representing the government to say that. The reason why, because it would be unjust. You can't say that and get around corpus delecta by saying, well, it was out there somewhere, never admitted in court, but it was somewhere enough that we could atmospherically pull it down and say that's independent. It was never the test of evidence. The background for this, Your Honors, is this was a murder investigation. This was not a gun purchase investigation. And the source of that information, the information being the guy who committed the murder bought the gun from Mr. Suriano, was not in a position to be used in our trial because of the need to use that source in a murder trial. Is this in the record? It was in discussions with counsel. So that's why I say I don't want to rely on it, because I don't think counsel had an opportunity to test the veracity of that statement or to get into the background or to interview that person or anything like that. So that's why I'm saying that I agree with the legal proposition, but we never attempted to use the statement in that manner. We felt we had the fact of a purchase of two guns, the fact that the guns could not be produced, and I disagree with Your Honor that that is not helpful in that there's only a few explanations for not having the guns. One, they were purchased for someone else. Two, that they were sold after the fact. Or three, that they were stolen or lost. And he did come up with an explanation that they were stolen. But there are legitimate explanations was my only point. Correct. But there's also a criminal explanation, which helps corroborate his statement that it was, in fact, criminal. He went into an explanation of these guns were stolen. When he was asked, well, when? Well, around the time of my birthday. Well, when was that? That was in November. Well, did you report it to police? Well, yes. Did you talk to police? No, my mother didn't. Did you follow up? No, I never followed up. Well, how do you know they were stolen? Well, a month after they were probably stolen, they went to my closet and they weren't there. Well, why did you wait a month? Well, my closet was messed up. Why was your closet messed up? My dog messed up my closet. It became very comical, this explanation of why and how the guns were stolen. But you agree that you can't corroborate the confession with the ridiculousness of the confession. No, but you can, I think, eliminate the possibility that the guns were stolen as one of the reasons why he could not produce the guns. So the other evidence that in terms of corroborating evidence, the second interview in which he repeats the facts identical to the first interview, that also is a fact. Again, when you're dealing with a false confession, it would be highly unusual to be able to repeat facts identically a month later. Is there case law support for using a second confession to corroborate a first confession? I could not find any, no, Your Honor. Is there case law to the contrary? There's just no case law on that question. I did not find any, but it's not whether the second confession The fact of a second confession. I'm not saying the substance of a second confession. But the fact of a second confession is supportive of the reliability of the first. Reliability of the first confession. He didn't go back to his original story, oh, they were stolen. He didn't come up with another reason. He was able to explain it in the exact same way as he did the first time. I'd be happy to answer any questions on the first issue if the Court has them. I agree with Your Honor's characterization that the Judge O'Grady did not make a per se finding. He went through a list of factors that, in his opinion, might rise to the level of allowing this type of testimony, much like in the U.S. v. Balea, where you had mental health issues, you might have contrary evidence issues, you might have DNA, you might have all sorts of other things that would allow you to see that perhaps these statements were false. But here you have none of that. So if I could just clarify on the first point, your arguments with respect to corroboration are, the defendant didn't possess the guns he purchased, he lied about purchasing the two guns in one transaction, and that his statement about the guns being stolen made little sense. Well, in addition to the fact that he went to a gun store, he filled out a form, he did in fact purchase two guns. I said that. He did not possess, did he purchase guns that he no longer possessed, he lied about purchasing the two guns in one transaction, and that his statements about the disappearance of the guns didn't make a lot of sense. And the second interview with the ATF agents, which paralleled the first. Can I ask a slightly odd question, but it's one I thought about and since I think we sort of finished asking questions. If a court let in false confession testimony, would that require us to rethink our polygraph prohibition? So if once we go down this sort of world and we entered into a world of introducing false confession evidence, then could the government not respond by, just as an example, offering the defendant the opportunity to take a polygraph, and if he refused to do so, introduce that refusal as a rebuttal to the false confession testimony? Or take the polygraph and introduce it. Once we get into this question that really has been previously reserved for the jury, why aren't those two sort of two sides of the same coin? That's actually addressed in a number of the cases in dealing with constitutional issues about being able to put on a defense. And the courts discuss that there's a broad range of analysis within these soft sciences, these social sciences. And they point out that on the one end, it's certainly permissible to have a per se rule banning polygraph. That that doesn't infringe on anyone's due process or Sixth Amendment rights. Whereas in other situations, such as eyewitness identification, even though it's a soft science and not necessarily subject to the same sort of, I think one case describes it as Newtonian science, that the courts are more lenient, so to speak, in allowing that testimony. But there doesn't seem to be any disagreement in the various decisions that, yes, you can create a per se rule that is justifiable. I think here, one of the problems that you see in the case law, that Hall, for example, was decided 20 years ago. In the 20 years since Hall, there's been very little progress in terms of coming to a consensus, either a legal consensus or a scientific consensus of where this testimony should lead. You look at Hall, for example, and in Hall, they're very critical of the experts that discuss in Hall, are very critical of the laboratory work that is at the foundation of Dr. Cutler's testimony. Whereas in other decisions, they're very critical of the empirical analysis that is used by Dr. Leo. So among the scientists, there's a wide disparity in terms of how they would structure their testimony and their opinions, and also the legal community as to whether those opinions are valuable. You may have answered this, and if so, forgive me, but do you have authority for the proposition that the fact that a defendant confesses more than once bolsters his original confession? I wouldn't say bolster, I'd say it's a fact that it happened. Well, okay, it's a fact that the sun will rise in the east tomorrow, but does that go to the question that we have to decide? Which is whether or not there's more, I thought the whole point of a corroboration requirement is that it be something other than the defendant's confession. So I don't, I'm having trouble understanding why the second confession helps. Well, if you go back, for example, to a statement at Wong Sung, the extrinsic proof is sufficient if it fortifies the truth of the confession without independently establishing the corpus delicti the crime. So I think the fact that the second confession was consistent with the first fortifies the truthfulness of the first. Thank you. But I have not found any cases on that point. Thank you. Thank you, Counsel. Thank you. Ms. Patton, do you have anything further? Very quickly, Your Honors, I know it's, I would like to answer Judge Sutton's question. I was going to ask. I do have a case for you. It's the Stevens case. It's published. Yes. In that case, there was a second. You're answering a different question. Thank you. I take your point. Stevens does say that there was more than one confession. Yes. I'm assuming you remember. Yes. Thank you. There were two identical interviews two months apart, and that did not help. Right. And that's a published case of yours. Or at least you're on the panel. I don't remember if you wrote it. Anyway, this court in 2007. Right. But that wasn't going to be my question. My question was going to go back to Burkholder's. We had a bit of a discussion early on about Burkholder. Yes. And my question is, although it's not admitted for the truth. You understood my question. Can it nevertheless be useful? I was thinking about this while you were discussing this with my colleague, Mr. Trump. This is a sufficiency of the evidence claim under Rule 29. That is the procedural posture. I understand it's an opera claim, but it's still a sufficiency of the evidence claim. And evidence that is not admitted for the truth of the matter asserted is not evidence of the truth of the matter asserted in the literal sense of being evidence. It's not evidence in the record that that happened. And it's because it's hearsay. So the unnamed D.C. homicide detective who told Burkholder whatever was not there and was not able to be cross-examined. And that's why it's not evidence of the truthfulness of that statement, which is why it's not admitted for the truth of the matter asserted. There is no evidence of what the homicide detective told Burkholder that is admitted for the truth. Because we have never had the ability to test that. We, I will say me, because it's not in the record and I was not trial counsel, have no idea who that person is or what they were told. And that's why it's not evidence. Literally, that's the purpose of the hearsay rule. And that's my answer to that. And so it is not evidence in the meaning of the word evidence technically or meaningfully. Meanwhile, the lie, when you say that he lied about having two guns bought at the same time, that is part of the confession. They only know that because it's part of his statement. That is a part of the confession that cannot self-bolster. His inability to produce the guns, they only know that because he said that. They did not get a search warrant. This is one of these things, like in one of the other cases, where follow-up investigation by the police could have corroborated. But they didn't. These are all part of his statements that they're trying to use to corroborate the statements. And under OPER, even supposedly exculpatory statements, which they never are. Well, if he said he didn't purchase the two guns in one transaction, and there are receipts that show that he purchased the guns in separate transactions, that seems to me pretty fairly corroborated. But the statement, the exculpatory statement that he didn't purchase them together, this is the thing that cannot be used to corroborate the confession. They're using his statements against him. This is not independent evidence. They're still trying to use the confession to corroborate the confession. As opposed to not possessing the guns, the independent evidence would have been getting a search warrant, searching the house, and not finding the guns. So the test is, corroborative evidence has to be substantial, independent evidence. It's not evidence from his statements themselves. But the evidence wouldn't be from his statement. It would be from the receipt showing that the guns were purchased on different occasions. That's why I'm having a little... But they're putting it together with his statement to show a lie. The part that they think is corroborative is intertwined with the statement. The only independent evidence, the form is not, there's nothing sketchy about the form unless they're combining it with his confession. That's why the test being independent evidence, I think, is the crucial word that is in Smith and in Opper. And that's why I would like to point out that in Opper, supposedly exculpatory statements, which again, we all know they are never exculpatory, but defendants often think they are, exculpatory statements, I can get you the exact quote, have to be corroborated to the exact same extent as admissions or confessions. All of them are treated the same for purposes of this rule. Exculpatory statements don't have to be corroborated any less than confessions or admissions, which I think is a critical point that the government is overlooking in trying to use the statements, the good parts of the statement, to corroborate the bad part of the statement. Let me ask this question about corroboration. If you, going back to my drug example, where I'm on the street and they catch me with a bag of marijuana, I go in and I confess that I intend to distribute this marijuana, they charge me with 841 PWID, do you agree that my... and that's all the evidence that goes in, right? I got a bag of marijuana, even if it's a small bag of marijuana, and I confess that I intend to distribute that bag, the corroboration of the possession, the mental state being the distribution, that my confession would be sufficient in that case, or do you think that also failed? That's literally it. I think under the decision in Sperling that I mentioned earlier, where the 924C, his possession of the gun was not enough to corroborate the 924C confession. But the 924C confession failed there for the lack of the 846 predicate. Which is drug distribution. Right, but he didn't have drugs. So he had a gun, that corroborated the 924C. I think it's pretty close, though. Because here you possess the drugs and you've said you intend to distribute them. Our guy possessed the gun for the 924C and said he intended to distribute, he had it in furtherance of future drug dealing. And so I think that's pretty close. I think under Sperling I would not agree that your hypothetical is not in my favor. And really just because of that case. I think it's a close call, but I think Sperling is in my favor. The take-home of your message is someone caught with a quantity of drugs who confesses an intent to distribute them, that that is insufficient to convict them of 841. I think the quantity would be relevant. I think if you have a gram as opposed to 20 kilos, would also be a relevant fact that would be corroborated. You could add more facts. But just really caught and a confession, that's insufficient. As we all know, Your Honor, I mean, amount of drugs can be proof of intent to distribute regardless of anybody's confession or not. And so if you have 20 kilos of heroin, I don't think anyone thinks that's personal use. It can't be the sole use. Right. So thank you, Your Honor, I appreciate it. Thank you, counsel, appreciate it. Thank you both for your argument. We'll ask the clerk to, I guess, recess the court until tomorrow morning at 830. So we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Allyson K. Duncan, Julius N. Richardson